Galán, Demandante y Apelante, *v.* Borinquen Trading
Corporation, Demandada y Apelada.

Apelación procedente de la Corte de Distrito de San Juan,
Segundo Distrito, en pleito sobre daños y perjuicios.

No. 2855.—Resuelto en junio 18, 1923.

Daños y Perjuicios por Negligencia — Contrato de Obras y Servicios. — En
este caso, a virtud de cierto accidente ocurrídole en tránsito para Cayey a un
automóvil de la demandada, ''A,'' dueño de un garage de Caguas, recibió
instrucciones para que lo reparara y lo trajera a San Juan; ''A'' no lo
trajo personalmente sino que encomendó a un *chauffeur* que lo hiciera; al
conducirlo el *chauffeur* causó el accidente que originó la reclamación de da-
ños a la demandada. *Se resolvió:* que tales hechos no demuestran que entre
la demandada y .el *chauffeur* existieran relaciones de mandante y mandata-
rio ni de principal y empleado (*master and servant*) sino un contrato de
arrendamiento de obras y servicios entre la demandada y ''A,'' por lo cual
aquélla no es responsable de los daños causados por negligencia del *chauffeur.*

Arrendamiento de Obras y Servicios —''Bailment.'' — El arrendamiento de
obras y servicios a que se refiere el artículo 1447 del Código Civil cae dentro
de la denominación genérica de un ''*bailment*'' para beneficio mutuo, que
significa la entrega de propiedad personal por una persona a otra en depó-
sito para un fin específico, con un contrato expreso o tácito de que el depó-
sito será fielmente cumplido y la propiedad devuelta o se dará debida cuenta
de la misma cuando el fin especial ha sido cumplido, o guardado hasta que
el depositante la reclame.

Id.—Mandato.—Si bien el mandato y el arrendamiento de obras o servicios tie-
nen sus puntos de contacto por lo que traen un origen común, se diferencian
sin embargo, en ciertas características que les distinguen y sus consecuen-
cias legales tienen que ser distintas. En el mandato el principio de represen-
tación constituye la esencia de este contrato, y eso precisamente es lo que le
diferencia del contrato de arrendamiento de servicios, *locatio operis faciendi.*

Depositante (*Bailor*)—Depositario—Negligencia del Depositario.—Un depo-
sitante (*bailor*) no puede ser responsable a una tercera persona por el uso
negligente de su depositario, de la cosa depositada. Tal responsabilidad
sólo podría sostenerse por virtud de la. teoría de que un depositante está
en la relación de principal o amo para con el depositario, y que tal rela-
ción no existe lo indica el hecho de que los deberes y obligaciones del de-
positante y depositario son totalmente distintos, y que el primero no tiene
control sobre los empleados del segundo.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. L. Méndez-Vaz.*

Abogados de la apelada: *Sres. C. S. Torres* y *M. Acosta
Velarde.*

El Juez Asociado Sr. Franco Soto, emitió la opinión del
tribunal.

El 10 de marzo de 1920 ocurrió en Santurce, parada 19, un accidente en el que un automóvil de la demandada arrolló al niño de corta edad, Antonio Sosa Galán, causándole varias lesiones de carácter grave; y alegándose que el accidente se debió a la culpa o negligencia del *chauffeur* que guiaba el auto, se estableció la demanda de este caso, fundándose además en los siguientes hechos: que la colisión sucedió por negligencia del *chauffeur* que corría a gran velocidad en aquel sitio de gran pendiente y no poco movimiento, sin tocar bocina ni ningún otro aparato para prevenir al público del peligro que corría; que el automóvil caminaba por el centro de la carretera, en vez de ir por la derecha, no fijando el *chauffeur* su atención en la guagua de donde el niño había bajado en compañía de la madre para atravesar la carretera y no haciendo nada para evitar el choque, ya que desviándose a la derecha en un sitio tan ancho como aquél, o doblando por la calle de ''Dos Hermanos'' o aplicando los frenos, lo hubiera evitado.

La demandada negó los hechos esenciales de la demanda y alegó como materia nueva de defensa, la negligencia contributoria de la demandante y el hecho de que la persona que guiaba el automóvil, no era ni había sido empleado o agente de la demandante.

El caso fué juzgado y la corte inferior declaró sin lugar la demanda, por lo que se ha establecido el presente recurso.

En la opinión de la corte inferior se admite que el suceso se debió a la negligencia del *chauffeur* que manejaba el automóvil, pero al mismo tiempo declara irresponsable a la demandada por el fundamento de que la relación entre el dueño del garage que designó al *chauffeur* para traer dicho automóvil de Caguas a San Juan y la demandada, es la demandante y mandatario y no se probó que el mandatario estuviera facultado para nombrar un sustituto. Según la relación que de los hechos hace el juez sentenciador, nosotros podemos llegar con vista de la prueba, a la misma

conclusión de que a la demandada no se le puede imputar la negligencia del *chauffeur,* pero no en virtud del razonamiento legal sentado por la corte inferior, considerando al *chauffeur* como un mandatario sustituto sin facultad el mandatario para nombrarlo, sino más bien porque se trata simplemente de un contrato sobre arrendamiento de obras y servicios, y ésta es la verdadera cuestión legal que nos corresponde examinar y dejar resuelta en este caso.

De los hechos resulta que un automóvil de la demandada había sido vendido a cierta persona residente en Cayey; que al pasar el auto por Caguas tuvo una avería y se le dobló un tapalodo; que por orden del *manager* de la corporación demandada fué llevado al garage de un tal Francisco Pereira, en Caguas, para ser reparado; que se ajustó la reparación en $35, pero dándosele instrucciones a Pereira que una vez terminado el trabajo, trajera el automóvil a San Juan para ser examinado; que Pereira no trajo personalmente el automóvil a San Juan, sino que encomendó al *chauffeur* Manuel Jiménez para hacerlo y a quien fué que le ocurrió el accidente al pasar por la parada 19 de Santurce arrollando al niño Sosa Galán y causándole las lesiones graves que describe la demanda.

Fundada en esos hechos la parte apelante presenta este caso bajo dos puntos de vista. Bajo el primero, sostiene el mismo razonamiento de la corte inferior, o sea la teoría del mandato, con la diferencia de que alega que la corte interpretó erróneamente las disposiciones que regulan el mandato, toda vez que no apareciendo que le estuviera prohibido a Pereira designar a un tercero para traer el automóvil a San Juan, la demandada era responsable por la culpa o negligencia del *chauffeur* que dió lugar al choque o colisión con el perjudicado. El segundo punto, sin abandonar el primero por su relación o semejanza, se refiere a la aplicación del principio "respondeat superior", intentándose establecer una relación de principal y empleado (*master and*

*servant*) entre la demandada y el chauffeur.   Pero nuestra conclusión es, que ni una ni otra teoría son aplicables a los hechos del presente caso.

Los artículos 1445 y 1447 del Código Civil prescriben:

"Artículo 1445.—El arrendamiento puede ser de cosas o de obras o servicios."

"Artículo 1447.—En el arrendamiento de obras o servicios, una de las partes se obliga a ejecutar una obra, o a prestar a la otra un servicio por precio cierto."

A los efectos de determinar las relaciones jurídicas, que surjan del artículo 1447 *supra,* entre las partes contratantes y terceras personas, se hace indispensable fijar su naturaleza y analizar los elementos que le distinguen de otras relaciones contractuales como las referidas por el apelante que aunque similares pertenecen, sin embargo, a estipulaciones contractuales diferentes.

El contrato que define el repetido artículo 1447, entra dentro de la denominación genérica de un *"bailment"* para beneficio mutuo.   Se han dado varias definiciones de lo que debe entenderse por tal contrato pero aunque todas ellas se han clasificado en dos grupos, según se siga a Blackstone o a los autores Kent y Jones, "sin entrar en una discusión de los muchos argumentos a favor y en contra de uno u otro de estos dos variables criterios, puede observarse que la palabra *'bailments'* procede del francés *'bailler',* y significa 'entregar'; y en su significación corriente, la que se ajusta a las autoridades modernas y es sustancialmente exacta, puede decirse que significa la entrega de propiedad personal por una persona a otra en depósito para un fin específico, con un contrato expreso o tácito de que el depósito será fielmente cumplido y la propiedad devuelta o se dará debida cuenta de la misma cuando el fin especial ha sido cumplido, o guardado hasta que el depositante la reclame." 3 R. C. L. 72, 73.

La conexión de mandante y mandatario o de principal y agente que insiste el apelante que hay entre el *chauffeur* y la demandada son también una derivación del *"bailment"* del cual, habiendo hecho las autoridades una división técnica de sus diferentes derivaciones, las han comprendido en cinco clases las cuales con sus nombres romanos son como sigue: *depositum, mandatum, commodatum, pignori acceptum o vadium y locatum.* Y esta última, o sea el arrendamiento, ha sido subdividida en (1) *locatio rei;* (2) *locatio operis faciendi;* (3) *locatio custodiae,* y (4) *locatio operis mercium vehendarium.* Pero esta división y subdivisión técnica, que corresponde más o menos al viejo sistema Romano, se ha sustituído por una clasificación más moderna, que comprende tres grupos, y en su apoyo, se dice por las autoridades y la jurisprudencia:

"La idea principal de nuestra ley con respecto a depósitos (*bailments*) está envuelta en la consideración de recompensa o no recompensa, y como se verá más claramente después; el principio fundamental es el pensamiento de que en aquella persona por cuyo trabajo o molestia no ha de ser compensado debe descansar más simplemente la obligación de cuidar. Por tanto de acuerdo con este principio, los depósitos (*bailments*) se clasifican ahora bajo estas tres denominaciones: (1) Aquellos que son para único beneficio del depositante; (2) Los que son para beneficio exclusivo del depositario; y (3) Los que son para beneficio de ambas partes." 3 R. C. L. 80.

"Así, en la primera clase, los depósitos (*bailments*) para beneficio del depositante, están comprendidos el *depositum* y *mandatum;* el *commodatum* está comprendido en la segunda clase, pues es un depósito (bailment) para único beneficio del depositario y la tercera clase, depósitos (bailments) para beneficio de ambas partes comprende el *locatum* con sus subdivisiones, y *pignory acceptum o vadium."* 3 *id.* 80.

Se desprende de lo que antecede, que si bien el mandato y el arrendamiento de obras o servicios tienen sus puntos de contacto por lo que traen un origen común, se diferencian

sin embargo, en ciertas características que les distinguen y sus consecuencias legales tienen que ser distintas. En el mandato el principio de representación constituye la esencia de este contrato, y eso precisamente es lo que le diferencia del contrato de arrendamiento de servicios, *locatio operis faciendi.*

"Otro contrato con el que corre peligro de confundirse el arrendamiento de obras o servicios es con el mandato. Suele señalarse entre ambos la diferencia que origina la absoluta necesidad del precio en el arrendamiento, al paso que el mandato se supone gratuito, según el artículo 1711, a no ser que el mandatario tenga por ocupación el desempeño de servicios de la especie a que el mandato se refiere, en cuyo caso se presume la obligación de retribuirlo. Más el motivo de distinción fundamental entre uno y otro contrato, estriba en la consideración del principio de representación que informa el mandato y que no toma parte para nada en el arrendamiento. La intención de las partes será el punto principal que habrá que poner en claro en los casos dudosos." Manresa, Com. Cod. Civ., tomo 10, p. 414.

La misma autoridad refiriéndose al mandato en sus relaciones con el arrendamiento de servicios, añade:

"Con posterioridad a la publicación del Código, el Tribunal Supremo, sin desdeñar ni repugnar la antigua doctrina de la gratuidad del mandato, ha fijado, a nuestro entender, con más acierto la naturaleza jurídica del mismo, basándola en la representación, de suerte que donde quiera que exista, hay un mandato. * * *.

"El mismo Tribunal, por sentencia fecha 27 de Octubre de 1899, ha fijado también la diferencia sustancial entre el arrendamiento de servicios y el contrato de mandato, al determinar el alcance del artículo 1544 y rechazar la aplicación indebida hecha por la sala del artículo 1709. Mientras en el primero, una de las partes se obliga a ejecutar una obra o a prestar a la otra un servicio por precio cierto, en el mandato lo esencial es la representación conferida, y sin ella no existe el contrato." Manresa, Com. Cod. Civ, tomo 11, p. 421.

A la luz de los principios expuestos el dueño del garage donde se reparó el automóvil que causó el accidente no os-

tentaba la representación de la demandada, pues aquél so-
lamente ejecutaba una obra y prestaba un servicio por un
precio cierto y sus actos por consiguiente, en relación con
terceras personas por daños que recibieran, mientras que-
daba el automóvil bajo su control y durante su entrega, no
podían afectar en modo alguno a dicha demandada, ni me-
nos podía alcanzarle responsabilidad alguna a dicha deman-
dada bajo el principio de "respondeat superior", en el sen-
tido de que la demandada tuviera, en su defecto de mandante,
el carácter de principal en conexión con el dueño del garage
y considerarse éste último su empleado. Tal relación tam-
poco existe en este caso, pues para ello era esencial demos-
trar que la demandada tuvo intervención en la selección del
chauffeur que condujo el automóvil así como el control y di-
rección del trabajo de dicho chauffeur en todos sus detalles.

"Parece estar muy bien establecido que un depositante (bailor)
no puede ser responsable a una tercera persona por el uso negli-
gente de su depositario, de la cosa depositada. Tal responsabili-
dad sólo podría sostenerse por virtud de la teoría de que un depo-
sitante está en la relación de principal o amo para con el deposi-
tario y que tal relación no existe lo indica el hecho de que los de-
beres y obligaciones del depositante y depositario son totalmente
distintos, y que el primero no tiene control sobre los empleados del
segundo." 3 R. C. L. 145, 146.

"Los elementos esenciales son que el principal tendrá el con-
trol y dirección no sólo del empleo a que se refiere el contrato sino
de todos sus pormenores, y tendrá el derecho de emplear a su gusto
y mediante debida causa separar del empleo a aquellos que le
sirven." 18 R. C. L. 491.

"Es además, esencial la relación de principal y empleado, y la
regla por supuesto es la misma cuando el fin es que el empleado
procederá como un agente o representante del patrono o principal,
que el principal tendrá la facultad y autoridad de dirigir y regular
los actos del supuesto empleado. Teniendo esta facultad el prin-
cipal debe responder. No teniéndola no puede ser hecho responsa-
ble. *Respondeat superior* es la base de la responsabilidad; y si el
patrono o principal carece de facultad para ordenar o dirigir los

actos del alegado empleado o agente no hay ningún superior cuyo deber sea responder por los actos del inferior.'' *Id. id.* 782-83.

Como en el caso que nos ocupa no aparece que exista disparidad sobre los hechos, las cuestiones discutidas se han reducido a cuestiones de ley, y habiendo considerado que solamente se trata de un arrendamiento de servicios y obras celebrado entre la compañía demandada y el dueño del garage Sr. Pereira, no existe responsabilidad alguna que pueda imputársele a la demandada con motivo del accidente ocurrido y que ocasionó los daños que se han intentado reclamar en esta acción.

Por las razones expuestas la sentencia inferior, debe confirmarse.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Wolf, Aldrey y Hutchison.